# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, David H. McGuckin, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am the case agent with primary responsibility over the investigation herein described. I have direct and indirect knowledge of the following information.

2. I am a Special Agent ("SA") with the United States Drug Enforcement Administration ("DEA") having served in this capacity for approximately 18 years, from August 2004 through April 2019, and from March 2021 to present day. I am currently assigned to the Manchester District Office (MDO), High Intensity Drug Task Force One (HIDTA 1) in Bedford, New Hampshire, where my primary duty is the investigation of criminal matters, including but not limited to, drug and money laundering investigations.

3. For approximately 23 months, from April 2019 through March 2021, I was employed as an Inspector with the United States Postal Inspection Service ("USPIS"). While employed with the USPIS, I was assigned to the Boston Division, Prohibitive Mail Team, where my primary duties included the investigation of criminal matters involving the U.S. Mail, including but not limited to, drug and money laundering investigations. I hold a Bachelor of Science degree from the University of New Hampshire in Durham, New Hampshire and a Master of Science in Education degree from Iona University in New Rochelle, New York.

4. In the course of my law enforcement training and experience, I have had an opportunity to search for, seize, and personally observe what I have recognized to be and what

1

was later confirmed by drug analysis to be scheduled drugs, including but not limited to heroin, fentanyl, methamphetamine, cocaine, marijuana (both dried and growing), crack cocaine, and various narcotics lawfully available only by prescription. I have conducted or participated in among other things, surveillance, undercover transactions, debriefings of informants and confidential sources, and reviews of taped conversations relating to narcotics trafficking. I have assisted in many other investigations, both state and federal. I have drafted drug related search and arrest warrants and have assisted in the execution of numerous search and arrest warrants in which controlled substances, drug paraphernalia, drug related electronic data, and other contraband was found. Through my training and experience, I have become familiar with the habits, methods, routines, practices and procedures commonly employed by persons engaged in the trafficking of illegal drugs.

5. My drug enforcement experience is varied. I have participated in the execution of numerous search warrants resulting in the seizure of large quantities of controlled substances and paraphernalia used in the manufacture and distribution of controlled substances; United States currency, records of narcotics and monetary transactions, drug customer lists and other documents relating to the manufacturing, transportation, ordering, purchasing and distribution of controlled substances, as well as the collection, expenditure, accounting, transportation, and laundering of drug proceeds. I have participated in the debriefing of numerous defendants, informants and witnesses who had personal knowledge regarding large-scale narcotics trafficking organizations. I have participated in all aspects of drug investigations, including surveillance, search warrant executions, and arrests.

6. Through my training, education, and experience, I have gained a nuanced understanding of criminal drug distribution activity. I have become generally familiar with the

way that DTOs conduct their illegal activities, including purchasing, manufacturing, storing, and distributing narcotics, the laundering of illegal proceeds, and the efforts of persons involved in such activities to avoid detection by law enforcement. I am familiar with the various methods of operation employed by narcotics traffickers to further their illicit operations, including methods used by them to distribute, store, and transport narcotics, as well as methods used by them to collect, expend, account for, transport, and launder drug proceeds. I am also familiar with the way that narcotics traffickers use personal and rented cars and trucks, rideshare services, common carriers, mail and private delivery services, and a variety of other motor vehicles to: (a) meet with co-conspirators, customers and suppliers; (b) transport, distribute, and purchase narcotics; (c) transport funds used to purchase narcotics; and (d) transport the proceeds of narcotics transactions. I have also learned that narcotics trafficking typically involves the local, interstate, and international movement of illegal drugs, to distributors and co-conspirators at multiple levels, and the movement of the proceeds of narcotics trafficking among multiple participants including suppliers, customers, distributors, and money launderers. Specifically, within the United States, the District of New Hampshire, illegal drugs and drug money are most often transported in motor vehicles. Consequently, the location of vehicles used by narcotics traffickers and those working with them can be instrumental in identifying and intercepting shipments of illegal drugs and drug proceeds.

      7.     This Affidavit is submitted in support of an application, under Rule 41 of the Federal Rules of Criminal Procedure, for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Uber to disclose to the government records and other information associated with the subscriber, passenger or client associated with a certain account, and the driver/contractor associated with a certain account, including the contents of

communications, that is stored at the premises owned, maintained, controlled, or operated by **Uber**, a provider headquartered in San Francisco, California. The information to be searched is described later in this Affidavit and in Attachment A, which is incorporated herein by reference. The requested warrant seeks authorization to search for evidence, fruits, and instrumentalities of violations of 21 U.S.C. § 841 (distribution and possession with intent to distribute controlled substances) and 21 U.S.C. § 846 (conspiracy to distribute and possession with intent to distribute controlled substances), which items are described in Attachment B of this Affidavit, which is incorporated herein by reference.

8. Based on the investigation, I submit that the facts contained in this Affidavit establish probable cause to believe that one ESEQUIER ARIAS-GONZALEZ ("ARIAS-GONZALEZ"), ORIANA CORONADO-NUNEZ ("CORONADO-NUNEZ"), NARQUIN SANCHEZ-UNBES ("SANCHEZ-UNBES"), and others known and yet unknown to the government, have committed violations of 21 U.S.C. § 841 and 21 U.S.C. § 846, and that contraband and evidence, fruits, and instrumentalities of these violations will be found in the target locations herein described.

9. I have consulted various sources of information to support my statements in this Affidavit. These statements are based on my participation in this investigation, as well as information I consider reliable from the following sources: my experience investigating drug trafficking offenses; oral and written reports and documents about this investigation that I have received from members of DEA, local law enforcement, and other federal law enforcement agencies; discussions I have had personally concerning this investigation with other experienced narcotics investigators; physical and fixed surveillance conducted by DEA and local law enforcement agencies, the results of which have been reported to me either directly or indirectly;

public records and law enforcement databases; telephone toll records and telephone subscriber information.

10. This Affidavit distinguishes between my direct and indirect knowledge of the matters asserted. Unless otherwise indicated, the statements contained herein are summaries of information that I have received from other law enforcement officers, and I specifically relied on oral reports and opinions from other law enforcement officers. When information is based on my personal knowledge or conclusion, it will be so stated.

11. This Affidavit is not an exhaustive account of information gathered during the investigation. As this Affidavit is being submitted for the limited purpose of establishing probable cause to support the issuance of the requested warrant, I have not included every fact concerning every aspect of the investigation that is known to me. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of the requested search warrant.

**PURPOSE OF AFFIDAVIT**

12. This Affidavit is made in support of an application for a search warrant, authorizing the search of the following account information ("ACCOUNT INFORMATION") in connection with the transport of twenty-five pounds of methamphetamine:

   a. Passenger/client: Oriana CORONADO-NUNEZ, telephone number (978) 457-1373 for the time period July 10, 2023.

   b. Passenger/client: Esequier ARIAS-GONZALEZ, telephone number (978) 885-3905 and telephone number (978) 885-3384 for the time period July 10, 2023.

   c. Passenger/client: Narquin SANCHEZ-UNBES, telephone number (785) 917-6187 for the time period July 10, 2023; and

  d.  Driver/contractor: James Augusta, telephone number (617) 390-4145 for the time period July 10, 2023, all of which are described in Attachment A.

13. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States (including a magistrate judge of such a court) . . . that . . . has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

14. Based on my training and experience, I submit that the facts contained in this Affidavit establish probable cause to believe that one ARIAS-GONZALEZ, CORONADO-NUNEZ, SANCHEZ-UNBES, and others known and yet unknown to the government, have committed violations of 21 U.S.C. § 841 (distribution of controlled substances and possession with intent to distribute controlled substances) and 21 U.S.C. § 846 (conspiracy to distribute and possess with intent to distribute controlled substances), and that contraband and evidence, fruits, and instrumentalities of these violations will be found in the target locations.

## LOCATIONS TO BE SEARCHED

15. I refer the Court to Attachment A incorporated herein by reference.

## PROPERTY TO BE SEIZED

16. I refer the Court to Attachment B incorporated herein by reference.

## STATEMENT OF PROBABLE CAUSE

17. Since early May of 2023 and before, the DEA and several local law enforcement agencies have been involved in the investigation of a person acting as a broker for controlled substances and others. During the past several months, a DEA Special Agent, acting in an undercover capacity (UC-1) had been in contact with the broker via a WhatsApp telephone

number. The broker was identified as a trafficker based in another country, with ties to a drug trafficking organization (DTO) in the Lawrence, MA area.  UC-1 was introduced to the broker telephonically by a defendant cooperator in this investigation.

18. During May and June 2023, DEA purchased fentanyl-laced pills in Seabrook, NH and fentanyl powder and pills in Andover, MA and approximately one pound of crystal methamphetamine in Methuen, MA.  These deals were facilitated by the broker and members of his above-referenced Lawrence, MA based DTO.

19. During the investigation, UC-1 had multiple recorded telephone and text conversations from NH with the broker. In an initial conversation, UC-1 told the broker that UC-1 is based in the Rochester, NH area.  In June of 2023, UC-1 had numerous recorded telephone conversations with the broker during which UC-1 and the broker negotiated to purchase 25 pounds of crystal methamphetamine for a price of $2,200 per pound, $55,000 in total.  On June 14, 2023, the broker notified UC-1 that the methamphetamine was ready.  UC-1 asked the broker if the broker's people would deliver the product to New Hampshire, but the broker stated his people declined, as they were nervous about law enforcement.

20. On June 15, 2023, UC-1 arranged with the broker via WhatsApp to conduct the transaction in the Lawrence, MA area. Initially UC-1 instructed the broker to tell his people to meet UC-1 in the parking lot of the Sonesta Hotel, 4 Tech Drive, Andover, MA. In anticipation of possibly having to show the broker's people proof of funds prior to obtaining the 25 pounds of methamphetamine, DEA obtained a flash roll containing $55,000 in U.S. currency Official Authorized Funds (OAF). During the course of the day, it appeared the broker's people were delaying for unknown reasons, and DEA terminated the deal. At one point, UC-1 photographed

the $55,000 OAF contained in a plastic bag and sent the picture via WhatsApp to the broker. UC-1 requested in turn a photograph of the methamphetamine. The following day the broker sent a picture of what appeared to me, based on my training and experience, to be 4 pounds of crystal methamphetamine. Several days later, on June 21, 2023, the broker sent a video and picture to UC-1 of what appeared to be 30 to 40 pounds of similarly packaged methamphetamine, which he purported to be the methamphetamine located in Lawrence, MA.

21. For several weeks in June and July 2023, the broker contacted UC-1 via WhatsApp recorded text messages and conversations, about supplying UC-1 with multiple pounds of methamphetamine. On July 5 and 6, 2023, UC-1 and the broker conversed via recorded WhatsApp text messages and calls. During these conversations, the broker and his Lawrence, MA, based DTO agreed to supply UC-1 with 25 lbs. of methamphetamine for $2200 per pound. Furthermore, the Lawrence, MA based DTO agreed to deliver the drugs to New Hampshire for an additional $3,000. UC-1 agreed and advised the broker that UC-1 needed to collect money over the weekend before they could conduct the deal.

***Seizure of Crystal Methamphetamine from Narquin SANCHEZ-UNBES on July 10, 2023***

22. On Sunday July 9, 2023, UC-1 contacted the broker via WhatsApp and informed the broker UC-1 had the money ($58,000) and would be ready for Monday July 10, 2023. The broker stated he would contact his Lawrence, MA based DTO about the product and delivery. The broker responded they were ready. Furthermore, the broker stated his people were nervous and wanted to be sure UC-1 was not law enforcement. UC-1 reassured the broker and stated he would have the broker's people meet at UC-1's storage unit in Rochester, NH. UC-1 stated he was waiting for money from one last person and asked the broker if he (UC-1) should separate the $3,000 for transportation costs and the $55,000 for the product, or provide the $58,000

8

altogether. The broker directed UC-1 to separate the $3,000 for the driver. UC-1 agreed. Due to a technical difficulty, this call was not recorded.[1]

23.     On Monday, July 10, 2023, UC-1 contacted the broker and stated to meet him at PIP Storage, located 87 Milton Road in Rochester, NH. During the day, UC-1 and the broker conversed via texts and recorded calls regarding the estimated time of arrival of the delivery. At approximately 3:50 p.m., the broker stated they were on the road and were approximately an hour away. At approximately 4:40 p.m., the broker stated his guy was there and UC-1 stated he would be there in two minutes. At approximately 4:45 p.m., a DEA Task Force Officer (TFO), acting in an undercover capacity (UC-2) and equipped with audio/video recording devices, arrived at the PIP Storage Facility and parked on the side of the building. Moments later, a white Toyota Corolla with Massachusetts registration, operated by an Uber driver, arrived and parked in the front left corner of the building. The broker called UC-1, who stated he was there. UC-2 walked from his vehicle to the white Toyota Corolla and knocked on the front driver's side window.  The driver of the vehicle rolled down the window and stated, "I'm just an Uber driver." While at the driver's window, UC-2 observed a Hispanic male (subsequently identified as Narquin SANCHEZ-UNBES) in the back seat wearing a red baseball hat. UC-2 asked the Uber driver if they were there to meet someone. The Uber driver motioned towards SANCHEZ-UNBES in the back seat. UC-2 then motioned to SANCHEZ-UNBES to roll his window down, which he did. UC-2 asked SANCHEZ-UNBES if he spoke English, SANCHEZ-UNBES shook his head no. Because the Uber driver spoke English, UC-2 requested that he (the Uber driver) ask SANCHEZ-UNBES if he brought the 25 pounds. The driver obliged and said something in Spanish to SANCHEZ-UNBES, who stated "Si" ("yes") and motioned towards a maroon bag

---

[1] All calls referenced in this affidavit were recorded, except where noted.

9

next to him in the back seat. UC-2 opened the rear driver-side door, opened the bag, and inspected the contents. UC-2 observed multiple packages wrapped in green cellophane, and clear plastic bags containing a white shard like substance. Based on UC-2's training and experience, UC-2 believed the packages contained crystal methamphetamine. UC-2 zipped up the bag and motioned for SANCHEZ-UNBES to follow him. UC-2 stepped away from the vehicle carrying the bag. UC-2 gave the pre-arranged arrest signal and SANCHEZ-UNBES was arrested without incident. Seized from the bag were 25 packages containing a white crystalline, shard-like substance wrapped in green and clear plastic cellophane.

24. The 25 packages of suspected crystal methamphetamine were weighed, totaling 25.82 pounds or 11,710.7 grams, and sent to the DEA Northeast Regional Laboratory (NERL) for complete analysis. The final report from NERL indicated in a positive result for crystal methamphetamine with a purity of 100%.

*Interview of Narquin SANCHEZ-UNBES on July 10, 2023*

25. Subsequent to his arrest, SANCHEZ-UNBES agreed to speak with agents. SANCHEZ-UNBES identified 29 Montgomery Street, Apartment 3 as the location from which he acquired the backpack that contained the 25 packages of crystal methamphetamine. SANCHEZ-UNBES identified Esequier ARIAS-GONZALEZ as the owner of the drugs and the individual who ordered and paid for the Uber ride that transported SANCHEZ-UNBES from Lawrence, Massachusetts to Rochester, New Hampshire. In addition, SANCHEZ-UNBES provided verbal consent for agents to examine his cell phone.

*Consent Search at 29 Montgomery Street, Apt. 3, Lawrence, Massachusetts on July 10, 2023*

26. On July 10, 2023, following the arrest of SANCHEZ-UNBES and seizure of the 25 packages of crystal methamphetamine, agents conducted a consent search at 29 Montgomery

Street, Apartment 3. During the encounter, agents observed ARIAS-GONZALEZ attempting to destroy evidence by discarding narcotics and other items indicative of narcotics distribution in the trash behind the apartment building. ARIAS-GONZALEZ elected not to cooperate with law enforcement.

27. During the consent search, agents identified Oriana CORONADO-NUNEZ as the girlfriend of ARIAS-GONZALEZ. CORONADO-NUNEZ provided phone number (978) 457-1373 and stated that anytime drugs were in the apartment, they were stored from the corner of the kitchen to the porch area. The kitchen had a door that led to the porch and a small closet. Inside the closet, agents discovered a white powdery substance, consistent with the properties and characteristics of fentanyl, contained in a clear plastic bag. The white powdery substance was inconclusive following a field test and has been forwarded to the DEA NERL for complete analysis.[2] Located directly outside of the kitchen door that led to the porch area was a cardboard box that contained two purple boxes for ATIVA 6-sheet crosscut paper shredders. Several days prior to the seizure of the 25 packages of crystal methamphetamine, UC-1 received a video from the broker that showed multiple clear bags of an off-white chard-like substance, consistent with the properties and characteristics of crystal methamphetamine, secreted inside a nondescript cardboard box that contained two blue/white boxes for Pen Gear 6-sheet paper shredders.

*Interview of Uber Driver James Augusta on July 18, 2023*

28. On July 18, 2023, agents interviewed the Uber driver regarding the events that occurred on July 10, 2023. The Uber driver stated he completed a fare Nashua, New Hampshire when a ride request came from an account under the name "Luisa." The Uber driver accepted

---

[2] Field testing suspected fentanyl often produces inconclusive results due to the unconventional and varied manufacturing process that results in inconsistent and diluted purity levels, therefore making it difficult to identify detectable amounts of the drug.

11

the fare and proceeded to the pickup address (29/31 Montgomery Street) in Lawrence, Massachusetts. There, the Uber driver picked up SANCHEZ-UNBES in front of 29/31 Montgomery Street and proceeded to drive to Rochester, New Hampshire. The Uber driver stated that SANCHEZ-UNBES repeatedly inquired about their arrival time and requested the Uber driver provide return transportation. The Uber driver and SANCHEZ-UNBES negotiated a price of $60 cash for the return trip.

### *Interview of Oriana CORONADO-NUNEZ on July 19, 2023*

29. On July 19, 2023, agents interviewed CORONADO-NUNEZ regarding the events of July 10, 2023. CORONADO-NUNEZ stated SANCHEZ-UNBES used to reside at the apartment at 29 Montgomery Street, but moved out approximately 8 months prior. CORONADO-NUNEZ stated she had never seen narcotics at the apartment and she was not associated with anything drug-related. These statements by CORONADO-NUNEZ contradicted her statements from July 10, 2023, the day agents conducted a consent search at 29 Montgomery Street, Apartment 3, where they seized approximately four ounces of a white powdery substance that field tested positive for cocaine.

### *Debrief of DEA Confidential Source Regarding ARIAS-GONZALEZ on July 20, 2023*

30. On July 20, 2023, a trusted and reliable DEA Confidential Source (CS) identified Esequiel ARIAS as a significant narcotics distributor in the Lawrence, Massachusetts area, being supplied multi-kilogram quantities of fentanyl by a Dominican male operating in Sinaloa, Mexico. The CS identified telephone number (978) 885-3384 and WhatsApp number (978) 885-3905 as being utilized by ARIAS. The CS identified a Dominican passport photograph of Esequier Santiago ARIAS-GONZALEZ as the individual he/she knew as Esequiel ARIAS.

### *Consent Search of SANCHEZ-UNBES Cell Phone on August 25, 2023*

31. On August 25, 2023, agents re-examined SANCHEZ-UNBES' cell phone, focusing on the WhatsApp text messages. Agents identified a text exchange between SANCHEZ-UNBES and a contact listed as "Mios," assigned telephone number (978) 885-3905. During the conversation, by both text message and audio text, SANCHEZ-UNBES and the user of (978) 885-3905 discuss SANCHEZ-UNBES completing a delivery of an unspecified cargo to an unknown male in Rochester, New Hampshire. Specifically, the user of (978) 885-3905 sends SANCHEZ-UNBES a Google Maps screenshot of the PIP Storage facility, the agreed upon location of the undercover deal for the 25 pounds of methamphetamine. Additionally, the user of (978) 885-3905 instructs SANCHEZ-UNBES to "Give that to him as soon as you see him … do it immediately and do not hold on to it, not even for a second … this way, 'that' won't be yours (UNBES-SANCHEZ) as soon as you hand it to him."

32. Based on the aforementioned intelligence, as well as my training and experience, I believe the user of telephone (978) 885-3905 is ARIAS-GONZALEZ. I believe ARIAS-GONZALEZ provided SANCHEZ-UNBES with the screenshot of the PIP Storage facility to assist SANCHEZ-UNBES in recognizing the location where he was to provide the 25 pounds of methamphetamine to UC-2 in exchange for the $58,000. Additionally, I believe ARIAS-GONZALEZ advised SANCHEZ-UNBES to complete the exchange as quickly as possible in an effort to minimize the time SANCHEZ-UNBES possessed the narcotics, and that SANCHEZ-UNBES would be "clear" of any illegal activity once UC-2 took possession of the 25 pounds of methamphetamine.

## ADDITIONAL FACTS

33. Uber is a technology company with a proprietary technology application (the "Uber App") that provides on-demand lead generation and related services. The Uber App connects independent providers of transportation services with requests from riders requesting transportation services. Drivers provide transportation services to riders through a range of offerings based on vehicle type and/or the number of riders.

34. Uber stores and maintains information related to riders and driver-partners. When riders sign up and use the service, certain information is obtained and maintained in the ordinary course of using the service. This may include a phone number, email address, name, account start and end date, registration IP address, status, rating, payment method, customer service communications, and photo. When driver-partners sign up to use Uber, it may have additional information including, license plate numbers, vehicle information, address, a driver-partner's employer (if any), insurance information, agreements, certain communications between driver-partners and riders, and some GPS location data.

35. Providers such as Uber typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

36. In some cases, account users will communicate directly with a provider about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

37. I am aware that drug traffickers often use or otherwise store data about importation, transportation, ordering, purchasing, shipping, and distribution of controlled substances on electronic devices. These communications and other records also tend to establish the traffickers' identities. Based on my training and experience, I am aware that drug traffickers often use electronic devices to facilitate the purchase of illegal drugs. These electronic devices often contain financial data relating to the transactions, such as bank account numbers, bank records, credit card numbers, credit card account and account information used for the purchase of illegal drugs, and all identifying information for the same. The communications and other data often also demonstrate the drug trafficker's state of mind.

38. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Uber to disclose to the Government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

39. Based on my training and experience, I submit that the facts contained in this Affidavit establish probable cause to believe that Oriana CORONADO-NUNEZ, Esequier

15

ARIAS-GONZALEZ and Narquin SANCHEZ-UNBES have committed violations of 21 U.S.C. § 841 (distribution of controlled substances and possession with intent to distribute controlled substances) and 21 U.S.C. § 846 (conspiracy to distribute and possess with intent to distribute controlled substances), and that contraband and evidence, fruits, and instrumentalities of these violations will be found within the ACCOUNT INFORMATION of CORONADO-NUNEZ, ARIAS-GONZALEZ and SANCHEZ-UNBES.

### REQUEST FOR SEALING

40.     I further request that the Court order that all papers in support of this application, including this Affidavit and requested search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

/s/ David H. McGuckin
David H. McGuckin
Special Agent
Drug Enforcement Administration

The affiant appeared before me by telephonic conference, on this date, pursuant to Fed. R. Crim. P. 4.1, and affirmed under oath the content of this affidavit and application.

Honorable Talesha L. Saint-Marc
United States Magistrate Judge

Date:   **3:06 PM, Aug 31, 2023**

Time:   _____

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following accounts that is stored at premised owned, maintained, or controlled by Uber, a company headquartered in San Francisco, California:

- Passenger/client: Oriana Coronado-Nunez, telephone number (978) 457-1373 for the time period July 10, 2023.

- Passenger/client: Esequier Santiago Arias-Gonzalez, telephone number (978) 885-3905 and telephone number (978) 885-3384 for the time period July 10, 2023.

- Passenger/client: Narquin Sanchez-Unbes, telephone number (785) 917-6187 for the time period July 10, 2023.

- Driver/contractor: James Augusta, telephone number (617) 390-4145 for the time period July 10, 2023.

## ATTACHMENT B

### Particular Things to Be Seized

**I.      Information to Be Disclosed by Uber**

To the extent that the information described in Attachment A is within the possession, custody, or control of Uber, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Uber, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Uber is required to disclose the following information to the government for each account listed in Attachment A for ~~June 9, 2023 thru June 11, 2023~~ June 10, 2023.

- the full name
- vehicle type & license plate
- driver-passenger communications
- phone number(s)
- email account(s)
- payment methods (as well as the names associated with those payment methods)
- device information (IP address and location)
- trusted contacts
- trip routes (date, time, starting point, end point, path, distance, duration and ride details)
- names of the drivers/passengers associated with all rides (produced in a way that correlates the drivers/passengers with times/dates as well as with the location information)
- classification as shared or solo ride

- all requests for rides sent or received, identifying the name of the passenger/client, the name of the Uber driver, and the time and date of the request.

**II.     Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of, or was property used in committing crimes involving, violations of 21 U.S.C. § 841 (distribution and possession with intent to distribute controlled substances) and 21 U.S.C. § 846 (conspiracy to distribute and possession with intent to distribute controlled substances) involving Uber clients and/or drivers committed in New Hampshire on July 10, 2023 relating to suspects James Augusta, Esequier Arias-Gonzalez, Oriana Coronado-Nunez and Narquin Sanchez-Unbes.